## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| JEAN KNUTSON, RACHEL HOLMES, and JANE RANFT, Individually and on Behalf of All Others Similarly Situated, | ) Case No.: 18-cv-1113 |
| | ) **CLASS ACTION COMPLAINT** |
| Plaintiffs, | ) |
| v. | ) **Jury Trial Demanded** |
| ENHANCED RECOVERY COMPANY, LLC, | ) |
| Defendant. | ) |

## INTRODUCTION

1.     This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2.     The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.     Plaintiff Jean Knutson is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.     Plaintiff Rachel Holmes is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5.     Plaintiff Jane Ranft is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6.     Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from them a debt allegedly incurred for personal, family, or household purposes, namely a personal credit card debt.

7.     Defendant Enhanced Recovery Company, LLC ("Enhanced") is a debt collection agency with its principal offices located at 8014 Bayberry Road, Jacksonville, Florida 32256.

8.     Enhanced is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9.     Enhanced is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

10.    Enhanced is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

### *Facts Relating to Plaintiff Knutson*

11.    On or around August 2, 2017, Enhanced mailed a debt collection letter to Plaintiff Knutson regarding an alleged debt owed to "Barclays Bank Delaware."  A copy of this letter is attached to this complaint as Exhibit A.

12.    Upon information and belief, the alleged debt identified in Exhibit A was for incurred by use of an open-end credit card account, which was used only for personal, family, or household purposes.

13.    Upon information and belief, Exhibit A is a form letter, generated by a computer, and with the information specific to Plaintiff Knutson inserted by the computer.

14.    Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

2

15.     Exhibit A lists the "Amount of Debt" as $685.90 and lists an "Account Number" ending in "1024."

16.     Upon information and belief, Exhibit A is the first written communication Enhanced mailed to Plaintiff regarding this alleged debt.

17.     Exhibit A contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors provide alleged debtors along with, or within five days of, the initial communication:

> **Federal Validation Notice:**
> Pursuant to 15 U.S.C./1692g(a), take notice that:
>
> 1. The amount of the claimed debt is the amount stated in the letter on the reverse side of this notice.
>
> 2. The name of the creditor to whom the debt is owed is in the letter on the reverse side of this notice.
>
> 3. Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after your receipt of this notice, the debt will be assumed to be valid by us.
>
> 4. If you notify our office below in writing within (30) days of your receipt of this notice that the debt, or any portion thereof is disputed, we will obtain verification of the debt or a copy of any judgment that may be of record against you. We will mail the verification or copy of the judgment to you.
>
> 5. Upon your written request to this office within thirty (30) days of your receipt of this notice, we will provide you with the name and address of the original creditor, if different from the current creditor listed in the letter on the reverse side of this notice.

18.     On or about August 3, 2017, Enhanced mailed another debt collection letter to Plaintiff Knutson regarding the alleged debt owed to "Barclays Bank Delaware."  A copy of the letter is attached to this complaint as Exhibit B.

19.     Upon information and belief, the letter in Exhibit B is also a form letter, generated by computer, and with the information specific to Plaintiff Knutson inserted by computer.

20.     Upon information and belief, the letter in <u>Exhibit B</u> is also a form debt collection letter used by Alliance to attempt to collect the alleged debt.

21.     Just as <u>Exhibit A</u>, <u>Exhibit B</u> lists the "Amount of Debt" as $685.90 and lists an "Account Number" ending in "1024."

22.     Upon information and belief, <u>Exhibits A and B</u> seek to collect the same account.

23.      Additionally, <u>Exhibit B</u> contains the following debt validation notice:

Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after your receipt of this notice, the debt will be assumed to be valid by us.

If you notify our office below in writing within (30) days of your receipt of this notice that the debt, or any portion thereof is disputed, we will obtain verification of the debt or a copy of any judgment that may be of record against you. We will mail the verification or copy of the judgment to you.

Upon your written request to this office within thirty (30) days of your receipt of this notice, we will provide you with the name and address of the original creditor, if different from the current creditor listed in the above section of this notice.

24.     <u>Exhibit A</u> and <u>Exhibit B</u> thus give conflicting deadlines.

25.     The unsophisticated consumer would be confused by <u>Exhibit A</u> and <u>Exhibit B</u> in combination, as it is unclear whether the 15 U.S.C. § 1692g(a) validation and dispute period expiration date is controlled by <u>Exhibit A</u> and <u>Exhibit B</u> for the accounts listed in duplicate.

26.     Moreover, the length of the validation period is set by statute at 30 days. 15 U.S.C. § 1692g(b). Nothing in the FDCPA permits an extension or re-starting of the validation period once the consumer receives the letter containing the validation notice. *Id.*

27.     A representation in a follow-up letter such as <u>Exhibit B</u> that is sent to the consumer during the validation period that the consumer still has 30 days to dispute the debt is false and misleading. The consumer only has, by statute, 30 days from receipt of the initial letter. 15 U.S.C. § 1692g(b). Sending the validation notice on subsequent letters without a clear explanation that the 30-day period runs from the consumer's receipt of the initial letter is misleading. Such conduct raises the risk that the consumer will believe that the 30-day period

4

stated in the follow-up letter is applicable and will fail to send a dispute within the actual validation period.

28.     Plaintiff Knutson was confused by <u>Exhibit A</u> and <u>Exhibit B</u>.

29.     Plaintiff Knutson had to spend time and money investigating <u>Exhibit A</u> and <u>Exhibit B</u>.

30.     Plaintiff Knutson had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of <u>Exhibit A</u> and <u>Exhibit B</u>.

### *Facts Relating to Plaintiff Holmes*

31.     On or around August 9, 2017, Enhanced mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "TD Bank USA/Target Credit."   A copy of this letter is attached to this complaint as <u>Exhibit C</u>.

32.     The alleged debt identified in <u>Exhibit C</u> was for a store-branded "Target" credit card account, which was used only for personal, family, or household purposes.

33.     Upon information and belief, <u>Exhibit C</u> is a form letter, generated by a computer, and with the information specific to Plaintiff Holmes inserted by the computer.

34.     Upon information and belief, <u>Exhibit C</u> is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

35.     Upon information and belief, <u>Exhibit C</u> is the first written communication Enhanced mailed to Plaintiff Holmes regarding this alleged debt.

36.     <u>Exhibit C</u> contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors provide alleged debtors along with, or within five days of, the initial communication:

Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after your receipt of this notice, the debt will be assumed to be valid by us.

If you notify our office below in writing within (30) days of your receipt of this notice that the debt, or any portion thereof is disputed, we will obtain verification of the debt or a copy of any judgment that may be of record against you. We will mail the verification or copy of the judgment to you.

Upon your written request to this office within thirty (30) days of your receipt of this notice, we will provide you with the name and address of the original creditor, if different from the current creditor listed in the above section of this notice.

37.   <u>Exhibit C</u> also contains the following text:

Our records indicate that your balance with TD Bank USA, N.A./Target Credit Card remains unpaid; therefore your account has been placed with ERC for collection efforts. We are willing to reduce your outstanding balance by offering a discounted payoff amount of $261.01.

Upon receipt and clearance of $261.01, your account will be satisified.

We are not obligated to renew this offer.

38.   <u>Exhibit C</u> states that Enhanced is "not obligated to renew these offers."

39.   <u>Exhibit C</u> does not provide a settlement expiration date upon which the offer would need to be renewed.

40.   In the absence of an expiration date, the unsophisticated consumer would understand a statement that the debt collector is "not obligated to renew this offer," to mean that Enhanced could, and would, rescind the settlement offer at any time and without notice.

41.   Upon information and belief, the debtor can settle the account for $261.01, or less, at any time.

42.   In order to preserve debt collectors' negotiating positions and prevent the settlement process from disintegrating, while still enforcing the congressional mandate prohibiting debt collectors from making false, deceptive, and misleading representations, the Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following

6

language: "We are not obligated to renew this offer." The word "obligated is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory*, 505 F.3d 769 at 775-76.

43. The safe-harbor language used in <u>Exhibit C</u> was created specifically for cases where a debt collection letter stated a settlement date certain. Without a date certain, the language is false, deceptive, misleading, and confusing, and gives rise to FDCPA liability. *Al v. Van Ru Credit Corp.*, No. 17-CV-1738-JPS, 2018 U.S. Dist. LEXIS 70321 (E.D. Wis. Apr. 26, 2018).

44. While <u>Exhibit C</u> tracks this safe-harbor language, without an expiration date, the language does not have its intended effect.

45. As a practical matter, the unsophisticated consumer does not know that the purpose of the statement that "we are not obligated to renew this offer" is to make her "realize that there is a renewal possibility but that it is not assured."

46. Where the Seventh Circuit prescribes safe-harbor language, this language is not "blessed" as generally acceptable – rather, the Seventh Circuit has made it clear that its safe-harbor language applies only in the specific "type" of case addressed in the opinion and that very language may, in fact, violate the FDCPA under other circumstances. *E.g., Boucher v. Fin. Sys. of Green Bay*, 2018 U.S. App. LEXIS 1094, at *17 (7th Cir. 2018) ("debt collectors cannot immunize themselves from FDCPA liability by blindly copying and pasting the *Miller* safe harbor language without regard for whether that language is accurate under the circumstances."); *Evory*, 505 F.3d at 775-76 ("we think the *present concern* can be adequately addressed . . ."); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) ("We commend this redaction as a safe harbor . . . for the kind of suit Bartlett has brought and now won. The qualification 'for the kind

7

Case 2:18-cv-01113-DEJ    Filed 07/18/18    Page 7 of 27    Document 1

of suit that Bartlett has brought and now won' is important. We are not certifying our letter against challenges based on other provisions of the statute; those provisions are not before us."); *see also O'Chaney v. Shapiro and Kreisman, LLC*, 2004 U.S. Dist LEXIS 5116, at *13 (N.D. Ill. Mar. 25, 2004) (rejecting the argument that a debt collector could avoid liability for use of safe harbor language where the Seventh Circuit expressly limited the reach of the language to different claims).

47.     The safe-harbor language used in <u>Exhibit A</u> was created specifically for cases where a debt collection letter stated a settlement date certain. Without a date certain, the language is false, deceptive, misleading, and confusing, and gives rise to FDCPA liability.

48.     Moreover, Enhanced' failure to provide an expiration date for its settlement offer is a material misrepresentation because it misleads the unsophisticated consumer about a material term of the settlement offer. *Evory*, 505 F.3d at 775-76; *see Smith v. Nat'l Enter. Sys., Inc.*, 2017 U.S. Dist. LEXIS 47701, *13 (W.D. Okla. Mar. 30, 2017) (because debt collector's purported time-sensitive settlement offer included an obviously misprinted expiration date that had already passed, "any consumer receiving [it] would be left to wonder about a material term of the offer, that is, the deadline for acceptance.").

49.     The unsophisticated consumer, not knowing when the settlement offer expired, would feel intimidated into paying. *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009) ("Confusing language in a dunning letter can have an intimidating effect by making the recipient feel that he is in over his head and had better pay up rather than question the demand for payment.").

50.     Moreover, providing the settlement offer alongside the validation notice contradicts and overshadows the consumer's validation rights.

51.     The settlement offer in Exhibit C is confusing to the unsophisticated consumer because it requires that the consumer tender a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

52.     The unsophisticated consumer, unsure when the settlement offer in Exhibit C expires, would feel compelled to make a settlement payment as soon as possible, and during the validation period, to ensure the settlement offer had not expired without notice prior to her tendering of payment.  Thus, there is an apparent contradiction between the settlement offer and the validation notice.

53.     The unsophisticated consumer would be confused about whether the settlement offer in Exhibit C would require her to forego her rights to validate the debt.

54.     The unsophisticated consumer would not know whether requesting verification of the debt would be interpreted as a rejection of the settlement offer.

55.     The plain language of Exhibit C is unclear as to how the debt collector would proceed in the event that the consumer mailed a dispute along with a payment that was intended to accept the settlement offer in the case that the debt could be verified.

56.     Where a consumer mailed a dispute along with a payment that was intended to accept a settlement offer in Exhibit C, under the terms of Exhibit C, the debt collector might:

        a.  Hold the payment in escrow pending verification of the debt;

9

b.  Interpret the payment as an accord and satisfaction and settlement in full that contractually bars the consumer from requesting verification of the debt; or

c.  Send the payment back to the consumer pending verification of the debt, in which case the consumer may no longer be able to settle the debt because the offer would have expired while the debt collector was obtaining verification.

57.  Where a consumer mails a dispute along with a payment that was intended to accept a settlement offer with an impending expiration date, whether the FDCPA requires a debt collector to proceed along any of the above paths is an open question in the Seventh Circuit. *See Bailey v. TRW Receivables Management Services, Inc.*, 1990 U.S. Dist. LEXIS 19638, *7-8 (D. Haw. Aug. 16, 1990) ("There is nothing in the statute which indicates that a debt collector is not required to provide verification where a consumer requests it after paying the debt.").

58.  Whether accepting payment, or even holding payment pending verification, is a "further attempt to collect the debt" is an open question in the Seventh Circuit. *See Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234, 1243 (D. Haw. Feb. 5, 2002) ("Because the debt collector in *Bailey* had already collected the debt, there was no collection to 'cease' pending validation.  In *Bailey*, keeping the consumer's money was tantamount to continuing collection activity.").

59.  The unsophisticated consumer would be confused as to whether she had effectively exercised her validation rights by sending a payment along with a dispute letter.

60.  The unsophisticated consumer may unwittingly reject a settlement offer by tendering the settlement payment along with her dispute letter.  If the debt collector treated the acceptance of a settlement offer as a continuing attempt to collect a debt, *see Sambor*, 183 F.

Supp. 2d at 1243, the debt collector would need to return the settlement payment pending verification of the debt.

61.     Because the debt collector may be legally obligated to return the consumer's settlement payment pending verification of the debt, the expiration date would lapse before the consumer had effectively made the settlement payment.  By the time the debt collector verified the debt, the consumer would have missed her chance to settle the debt even though she attempted to tender a payment before the expiration date.

62.     Moreover, the unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offer in Exhibit C.

63.     The consumer needs time to process the information contained in an initial debt collection letter before deciding whether to dispute, pay or take other action. This is the point of the 30 day period in 15 U.S.C. 1692g(a).  *See Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 95 (2d Cir. 2008) ("the aim of § 1692g is to provide a period for the recipient of a collection letter to consider her options.").

64.     Prior to deciding whether to dispute a debt, a consumer may have to sort through personal records and/or memories to try to remember if the debt might be legitimate. She may not recognize the creditor – debts are freely assignable and corporations, especially banks, often change names.

65.     The § 1692g validation period lasts for 30 days. It is the consumer's right to *request* verification until the end of the thirty day period.  If the request is not made until the end of the thirty day period, the verification request would not be processed, researched by the creditor, and returned to the consumer until long after settlement offer payment deadline has

expired. The consumer would be left with no time to review the verification and determine whether to accept the settlement offer.

66. The unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offers in Exhibit C. The unsophisticated consumer would believe that the settlement offer would expire before the debt collector provides verification and would be left with little or no time to review the verification and determine whether to accept the settlement offer.

67. The effect of the settlement offer in the initial written debt communication is to discourage or prevent consumers from exercising their validation rights.

68. Defendant's "explanatory language" in Exhibit C, *see, e.g.*, *Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997), does not clarify how---or even whether---a debtor may both dispute the debt and take advantage of the settlement.

69. Any explanatory language should make clear whether a dispute will extend the settlement offer while the debt collector is in the process of complying with its obligation to verify the debt.

70. Plaintiff Holmes was deceived, misled, and confused by Exhibit C.

71. The unsophisticated consumer would be deceived, misled, and confused by Exhibit C.

72. Plaintiff Holmes had to spend time and money investigating Exhibit C, and the consequences of any potential responses to Exhibit C.

73. Plaintiff Holmes had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to obtain counsel on the consequences of Exhibit C.

**Facts Related to Plaintiff Ranft**

74.     On or about November 8, 2017, Enhanced mailed a debt collection letter to Plaintiff Ranft regarding an alleged debt owed to "AT&T."  A copy of this letter is attached to this complaint as Exhibit D.

75.     Upon information and belief, the alleged debt owed to "AT&T" referenced in Exhibit D was incurred for telecommunications services used only for personal, family, or household purposes.

76.     Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Plaintiff Ranft inserted by computer.

77.     Upon information and belief, Exhibit D is a form debt collection letter used by Defendant to attempt to collect alleged debts.

78.     Upon information and belief, Exhibit D is the first written communication that Defendant sent to Plaintiff Ranft regarding the alleged debt to which Exhibit D refers.

79.     Exhibit D contains the following text:

> Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after your receipt of this notice, the debt will be assumed to be valid by us.
>
> If you notify our office below in writing within (30) days of your receipt of this notice that the debt, or any portion thereof is disputed, we will obtain verification of the debt or a copy of any judgment that may be of record against you. We will mail the verification or copy of the judgment to you.
>
> Upon your written request to this office within thirty (30) days of your receipt of this notice, we will provide you with the name and address of the original creditor, if different from the current creditor listed in the above section of this notice.

80.     The above language in Exhibit D reflects the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer, which discloses the statutorily mandated 30-day validation period. 15 U.S.C. § 1692g.

81.     If Exhibit D was actually mailed on November 7, 2017, it would have been received on or after November 10, 2017.

82. If Exhibit D was received on November 10, 2017, the consumer would have until December 10, 2017 to mail out a request for validation. *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 519 (7th Cir. 1997) (consumer triggers verification rights by mailing out written notice of dispute on thirtieth day after receiving validation notice).

83. Exhibit D also contains the following settlement offer:

> Our records indicate that your balance with AT&T remains unpaid; therefore your account has been placed with ERC for collection efforts. We are willing to reduce your outstanding balance by offering discounted options.
>
> Option 1: Pay the settlement of $241.02, please remit by December 13, 2017.
> Option 2: Pay the settlement of $267.80, payable in 2 monthly payments of $133.90.
> Option 3: Pay the settlement of $294.57, payable in 3 monthly payments of $98.19.
>
> We are not obligated to renew this offer.

84. Settlement offer included Exhibit D. requires that the consumer's payment be received by December 13, 2017.

85. Exhibit D also states that Enhanced "is not obligated to renew this offer."

86. Any consumer, unsure whether a payment in the amount of the settlement offer received after December 13, 2017 would actually settle the debt, would feel compelled to allow for an extra two or three days for mailing and Enhanced processing to ensure they were able to take advantage of the settlement offer in Exhibit D and that the payment would not be processed as a partial payment on the full balance.

87. Thus, any consumer who wished to take advantage of the settlement offer in Exhibit D would feel compelled to mail out payment on or before December 13, 2017.

88. The 30-day validation period identified in Exhibit D would end at or around the same time the consumer would feel compelled to mail out a payment to take advantage of the settlement offer in Exhibit D before it expires. *See* 15 U.S.C. § 1692g(a).

14

89.     Assuming the consumer sought verification at or near the end of the statutorily mandated 30-day validation period, there would be no way for Enhanced to provide verification in time for the consumer to tender payment in acceptance.

90.     The unsophisticated consumer, realizing that the debt could not be verified before the settlement offer in <u>Exhibit D</u> expired and that Enhanced was not obligated to renew the offer would be unsure how, or whether, she could seek verification of the debt but accept the settlement offer if the debt could be verified.

91.     The statement that a debt collector is "not obligated to renew" an offer tracks safe-harbor language that was created by the Seventh Circuit, which is meant to signal to the unsophisticated consumer that the offer may not *actually* expire on the expiration date because renewal of the offer is, at the very least, a possibility.  *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776 (7th Cir. 2007).

92.     Where the Seventh Circuit prescribes safe-harbor language, this language is not "blessed" as generally acceptable---rather, the Seventh Circuit has made it clear that its safe-harbor language applies only in the specific "type" of case addressed in the opinion.  *See Boucher v. Fin. Sys. of Green Bay*, 2018 U.S. App. LEXIS 1094, at *17 ("debt collectors cannot immunize themselves from FDCPA liability by blindly copying and pasting the *Miller* safe harbor language without regard for whether that language is accurate under the circumstances."); *Evory*, 505 F.3d at 775-76 ("we think the *present concern* can be adequately addressed . . ."); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) ("We commend this redaction as a safe harbor for debt collectors who want to avoid liability for the kind of suit Bartlett has brought and now won.  The qualification "for the kind of suit that Bartlett has brought and now won" is important.  We are not certifying our letter against challenges based on other provisions of the

statute; those provisions are not before us."); *see also O'Chaney v. Shapiro and Kreisman, LLC*, 2004 U.S. Dist LEXIS 5116, at *13 (N.D. Ill. Mar. 25, 2004) (rejecting the argument that a debt collector could avoid liability for use of safe harbor language where the Seventh Circuit expressly limited the reach of the language to different claims).

93.     In the context of an initial settlement letter, the unsophisticated consumer, believing that the foregoing of validation rights is a material aspect of the settlement offer, would understand the language that the debt collector is "not obligated to renew" to mean that the debt collector would most likely *not* renew the offer, since the debtor would no longer have validation rights to bargain away.

94.     Exhibit D does not explain how, or even whether, a consumer may request verification of the debt and accept the settlement offer if the debt is verified.

95.     The unsophisticated consumer, wishing to take advantage of the settlement offer as long as it could be verified, might tender her payment to accept the settlement offer along with the notice of dispute.

96.     The unsophisticated consumer would also not know whether or how she could receive her money back from Defendants if Defendants are unable to verify the debt or if the debt actually is not valid.

97.     In fact, though the unsophisticated consumer would not realize it, the debt collector need not even verify the debt as long as it ceases further attempts to collect the debt. *See Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997).

98.     Thus, the purpose and effect of providing a settlement offer with a letter containing the validation notice is to discourage the unsophisticated consumer from submitting a written dispute.

16

99.     The settlement offer in Exhibit D is confusing to the unsophisticated consumer because it requires that the consumer tender a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

100.    Because the settlement offer in Exhibit D expires at or around the same time as the validation period, there is an apparent contradiction between the settlement offer and the validation notice. *See Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 776 (Colo. 2008) ("The extended time for taking advantage of the settlement offer – couched within a personalized assurance that all her rights will be preserved through oral communication – effectively misleads the consumer into delaying the transmission of the consumer's written request for the verifying documentation, thereby causing the loss of valuable consumer rights.").

101.    The unsophisticated consumer would be confused about whether the settlement offer in Exhibit D would require her to forego her rights to validate the debt.

102.    The unsophisticated consumer would not know whether requesting verification of the debt would be interpreted as a rejection of the settlement offer.

103.    The plain language of Exhibit D is unclear as to how Enhanced would proceed in the event that the consumer mailed a dispute along with a payment that was intended to accept the settlement offer in the case that the debt could be verified.

104.    Where a consumer mailed a dispute along with a payment that was intended to accept a settlement offer in Exhibit D, under the terms of Exhibit D, Enhanced might:

a. Hold the payment in escrow pending verification of the debt;

b. Interpret the payment as an accord and satisfaction and settlement in full that contractually bars the consumer from requesting verification of the debt; or

c. Send the payment back to the consumer pending verification of the debt, in which case the consumer may no longer be able to settle the debt because the offer would have expired while the debt collector was obtaining verification.

105. Where a consumer mails a dispute along with a payment that was intended to accept a settlement offer with an impending expiration date, whether the FDCPA requires a debt collector to proceed along any of the above paths is an open question in the Seventh Circuit. *See Bailey v. TRW Receivables Management Services, Inc.*, 1990 U.S. Dist. LEXIS 19638, *7-8 (D. Haw. Aug. 16, 1990) ("There is nothing in the statute which indicates that a debt collector is not required to provide verification where a consumer requests it after paying the debt.").

106. Whether accepting payment, or even holding payment pending verification, is a "further attempt to collect the debt" is an open question in the Seventh Circuit. *See Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234, 1243 (D. Haw. Feb. 5, 2002) ("Because the debt collector in *Bailey* had already collected the debt, there was no collection to 'cease' pending validation. In *Bailey*, keeping the consumer's money was tantamount to continuing collection activity.").

107. The unsophisticated consumer would be confused as to whether she had effectively exercised her validation rights by sending a payment along with a dispute letter.

108. The unsophisticated consumer may unwittingly reject a settlement offer by tendering the settlement payment along with her dispute letter. If the debt collector treated the acceptance of a settlement offer as a continuing attempt to collect a debt, *see Sambor*, 183 F.

Supp. 2d at 1243, the debt collector would need to return the settlement payment pending verification of the debt.

109.    Because the debt collector may be legally obligated to return the consumer's settlement payment pending verification of the debt, the expiration date would lapse before the consumer had effectively made the settlement payment.  By the time the debt collector verified the debt, the consumer would have missed her chance to settle the debt even though she attempted to tender a payment before the expiration date.

110.    Moreover, the unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offer in Exhibit D.

111.    The consumer needs time to process the information contained in an initial debt collection letter before deciding whether to dispute, pay or take other action. This is the point of the 30 day period in 15 U.S.C. 1692g(a).

112.    Prior to deciding whether to dispute a debt, a consumer may have to sort through personal records and/or memories to try to remember if the debt might be legitimate. She may not recognize the creditor – debts are freely assignable and corporations, especially banks, often change names.

113.    The § 1692g validation period lasts for 30 days. It is the consumer's right to *request* verification until the end of the thirty day period. If the request is not made until the end of the thirty day period, the verification request would not be processed, researched by the creditor, and returned to the consumer until long after settlement offer payment deadline has expired. The consumer would be left with no time to review the verification and determine whether to accept the settlement offer.

19

114. The unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offers in <u>Exhibit D</u>. It is likely that the settlement offer would expire before the debt collector provides verification. The consumer would be left with little or no time to review the verification and determine whether to accept the settlement offer.

115. The effect of the settlement offer in the initial written debt communication is to discourage or prevent consumers from exercising their validation rights.

116. Defendant did not include explanatory language in <u>Exhibit D</u>, *see, eg. Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997).

117. Any explanatory language should make clear whether a dispute will extend the settlement offer while the debt collector is in the process of complying with its obligation to verify the debt.

118. Plaintiff Ranft was confused by <u>Exhibit D</u>.

119. The unsophisticated consumer would be confused by <u>Exhibit D</u>.

120. Plaintiff Ranft had to spend time and money investigating <u>Exhibit D</u> and the consequences of any potential responses to <u>Exhibit D</u>.

121. Plaintiff Ranft had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of <u>Exhibit D</u>.

### *The FDCPA*

122. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Solutions*, 2018 U.S. Dist. LEXIS 50016, *12, 2018 WL 1513043 (E.D. Wis. March 27, 2018); *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June

12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist.

LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

123.    Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

124.    15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

22

125.    15 U.S.C. § 1692e(5) specifically prohibits debt collectors from making a "threat to take any action that cannot legally be taken or that is not intended to be taken."

126.    15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

127.    15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

128.    15 U.S.C. § 1692g(b) states, in part:

(b) **Disputed debts**
If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

129.    Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

## <u>COUNT I - FDCPA</u>

130.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

131.    Count I is brought on behalf of Plaintiff Knutson.

23

132.     Exhibit A and Exhibit B include contradictory deadlines as to the expiration of the validation notice and thus the representations included Exhibit A and/or Exhibit B are false, deceptive, and misleading as to such deadlines.

133.     Exhibit B also overshadows or contradicts Exhibit A's disclosures regarding (1) the debt collector will assume the debt is valid unless the consumer disputes the debt within 30 days, (2) the consumer's right to dispute the debt, and (3) the consumer's right to obtain verification the debt

134.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, and 1692g(b).

## COUNT II - FDCPA

3.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

4.     Count II is brought on behalf of Plaintiff Holmes.

5.     Exhibit C includes an offer settlement offer that is misleading as to whether the debt collector may revoke the offer of settlement at any time.

6.     Exhibit C is further misleading insofar as it would indicate to the unsophisticated consumer that a failure to accept the offer before its "expiration" would result in the consumers' inability to settle the debt for less than the full amount.  *Evory*, 505 F.3d at 775-76.

7.     Exhibit C effectively threatens to revoke the settlement offers at any time and without notice even though neither Enhanced nor the creditor intended to revoke these offers.

8.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692f.

## COUNT III – FDCPA

9.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

10.     Count II is brought on behalf of Plaintiff Holmes.

11.     The expiration dates listed for the settlement offers in Exhibit C conflict with and overshadow the debt validation notice, in that the settlement offers require the consumer to tender payment during the validation period or shortly thereafter, but do not explain how the validation notice and settlement "deadline" fit together. 15 U.S.C. § 1692g; *Bartlett*, 128 F.3d at 500.

12.     Exhibit C is confusing, deceptive, and/or misleading to the unsophisticated consumer.

13.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f and 1692g(b).

## COUNT IV – FDCPA

3.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

4.     Count IV is brought on behalf of Plaintiff Ranft.

5.     The expiration dates listed for the settlement offers in Exhibit D conflict with and overshadow the debt validation notice, in that the settlement offers require the consumer to tender payment during the validation period or shortly thereafter, but do not explain how the validation notice and settlement "deadline" fit together. 15 U.S.C. § 1692g; *Bartlett*, 128 F.3d at 500.

6.     Exhibit D is confusing, deceptive, and/or misleading to the unsophisticated consumer.

7.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f and 1692g(b).

## CLASS ALLEGATIONS

8.     Plaintiff brings this action on behalf of three classes.

9.      Class I consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect an alleged debt incurred for personal, family or household purposes, (d) who were subsequently sent a collection letter in the form of Exhibit B to the Complaint in this action, (e) seeking to collect the same alleged debt, (f) between July 18, 2017, and July 18, 2018, inclusive, (g) where neither letter was not returned by the postal service.

10.      Class II consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit C to the complaint in this action, (c) seeking to collect a debt incurred for personal, family, or household purposes, (d) between July 18, 2017, and July 18, 2018, inclusive, (e) that was not returned by the postal service.

11.      Class III consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit D to the complaint in this action, (c) seeking to collect a debt incurred for personal, family or household purposes, (d) between July 18, 2017, and July 18, 2018, inclusive, (e) that was not returned by the postal service.

12.      The classes are each so numerous that joinder is impracticable.  Upon information and belief, there are more than 50 members of each class.

13.      There are questions of law and fact common to the members of the classes, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

14.      Plaintiffs' claims are typical of the claims of the respective class members.  All are based on the same factual and legal theories.

15.     Plaintiffs will fairly and adequately represent the interests of the respective class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

16.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

17.     Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Classes and against Defendant for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  July 18, 2018

**ADEMI & O'REILLY, LLP**

By:     /s/ Mark A. Eldridge_____
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        jblythin@ademilaw.com
        meldridge@ademilaw.com
        jfruchter@ademilaw.com
        bslatky@ademilaw.com